UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TERRY JOE BEASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:16-cv-1373 |
| | ) | Judge Aleta A. Trauger |
| | ) | |
| WELLS FARGO BANK, N.A., as Trustee | ) | |
| for the Certificate Holders of PARK PLACE | ) | |
| SECURITIES, INC., asset-backed pass- | ) | |
| through Certificates, SERIES 2004-MCW1, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM

The defendant, Wells Fargo Bank, N.A ("Wells Fargo"), as trustee for the certificate holders of Park Place Securities, Inc., asset-backed pass-through certificates, Series 2004-MCW1, has filed a Motion for Judgment on the Pleadings (Docket No. 16), to which the plaintiff, Terry Joe Beasley, has filed a Response in Opposition (Docket No. 18). For the following reasons, the motion will be granted.

### BACKGROUND[1]

In 2004, the plaintiff, Terry Joe Beasley, borrowed $189,000 from Ameriquest Mortgage Company ("Ameriquest") to purchase a property located at 2009 College View Drive,

---

[1] Unless otherwise noted, the facts recounted in this section are drawn from the Complaint (Docket No. 1-1) and are assumed to be true for purposes of evaluating the Motion for Judgment on the Pleadings. In deciding a motion for judgment on the pleadings, the court may also consider documents that were either attached to the pleadings or referred to in the pleadings and integral to the claims before the court. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). The court will, therefore, include in its consideration the exhibits attached to Wells Fargo's Answer and the Note attached to the pending motion, which is referred to in the Complaint as the "closing documents" (Docket No. 1-1 ¶ 33) and is integral to the plaintiff's claims.

1

Murfreesboro, Tennessee 37130 (the "Property"). (Docket No. 11-1 (Deed of Trust); Docket No. 17-1 (Note).) At some point in the last eight years, Ameriquest transferred and assigned the Deed of Trust and Note to Wells Fargo, which acts as trustee for Park Place Securities, Inc. ("Park Place"), a "securitized trust created for the purpose of pooling various residential home mortgages." (Docket No. 1-1 ¶ 34.)[2] Also at some point in the last eight years – the Complaint does not clarify when[3] – Mr. Beasley defaulted on his mortgage. In April of 2016, Wells Fargo initiated foreclosure proceedings on the Property, but it appears that the foreclosure sale has been postponed while Mr. Beasley pursues this suit seeking to enjoin Wells Fargo from further action in connection with the foreclosure.

In the Complaint, Mr. Beasley alleges multiple instances of wrongdoing in connection with his mortgage and the scheduled foreclosure on the Property that he claims warrant judicial

---

[2] Wells Fargo contends that it acquired the debt in 2014, as evidenced by a January 8, 2014 agreement transferring and assigning the Deed of Trust and Note from Ameriquest to Wells Fargo. (Docket No. 11-2 (Transfer & Assignment).) This contention is undercut, however, by a 2009 limited subordination agreement between Wells Fargo and the Small Business Administration that subordinates an indebtedness owed to the Administration and secured by the Property to "the Wells Fargo Deed of Trust." (Docket No. 11-3 (Subordination Agreement).) Presumably, Wells Fargo would have no reason to enter into such an agreement in 2009 unless it had already acquired Mr. Beasley's debt. Neither party has attempted to explain how this subordination agreement can be reconciled with the agreement purporting to transfer the Deed of Trust and Note from Ameriquest to Wells Fargo five years later.

[3] In his Response, Mr. Beasley argues that he has been in default since 2009, which he claims "is alleged (perhaps not clearly) in Paragraph 37 of [the] Complaint." (Docket No. 18, p. 7.) Paragraph 37 does not state when Mr. Beasley defaulted on his mortgage, however, but merely references the limited subordination agreement between Wells Fargo and the Small Business Administration discussed *supra* footnote 2. (Docket No. 1-1 ¶ 37.) The court acknowledges its obligation to construe the the Complaint in the light most favorable to Mr. Beasley, but – while it is certainly *possible* that the 2009 subordination agreement was prompted by Mr. Beasley's default – the court does not find such an inference to be reasonable or supported by other allegations in the Complaint.

intervention. For example, Mr. Beasley alleges that, at all times, the identity of the "true creditor" of his mortgage has been "shielded and made very confusing" for him and that the "actual creditor" of his loan is unknown. (*Id.* ¶¶ 39, 42, 45.) The Complaint further alleges that, "[o]ver the years, various entities have claimed to be the 'creditor' or 'lender' on Mr. Beasley's loan; including, but not limited to, Bank of America, [Ameriquest], and Countrywide." (*Id.* ¶ 39.) The Complaint does not, however, identify any conduct on the part of Wells Fargo that Mr. Beasley claims contributed to his ignorance of the identity of his creditor.

Mr. Beasley further alleges that "these actions in obscuring the real creditor have harmed [him] because, upon information and belief, he qualifies for loss mitigation options which would allow him to stay in his home and satisfy his debts." (*Id.* ¶ 42.) Despite being qualified for this loss mitigation, Mr. Beasley further alleges that he was never "offered . . . any loss mitigation alternatives such as a loan modification or 'short sale'" of the Property. (*Id.* ¶ 41.) The record does not, however, support Mr. Beasley's allegations regarding loss mitigation. On April 11, 2016, Rubin Lublin TN, PLLC sent a "Notice of Acceleration and Foreclosure" to Mr. Beasley on behalf of Wells Fargo. (Docket No. 11-4 (Notice).) This Notice advised Mr. Beasley that Wells Fargo was instituting non-judicial foreclosure proceedings against the Property and that, unless Mr. Beasley paid the entire amount of the debt in full, a foreclosure sale would take place on May 19, 2016. (*Id.* at p. 1.) The Notice directed Mr. Beasley to a website containing "information relative to loss mitigation options and saving [his] home from foreclosure." (*Id.* at p. 2.) Mr. Beasley has not denied that he received this letter, nor has he alleged that he visited the loss mitigation website or submitted an application for loss mitigation to Wells Fargo at any point.

## PROCEDURAL HISTORY

On June 13, 2016, Mr. Beasley filed an action against Wells Fargo in the Chancery Court of Rutherford County, Tennessee, seeking an injunction prohibiting Wells Fargo from taking further action on the scheduled foreclosure. (Docket No. 1-1.) In the Complaint, Mr. Beasley alleges that Wells Fargo (1) wrongfully foreclosed on the Property when it "fail[ed] to comply with the terms of the securitized trust" in violation of Tenn. Code Ann. § 35-5-101 *et seq.* and Article 1, Section 8 of the Tennessee Constitution; (2) violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by using false, deceptive, and misleading statements in attempting to foreclose on the Property; and (3) violated regulations promulgated pursuant to the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5511 *et seq.*, by failing to offer him loss mitigation alternatives to foreclosure. (*Id.* ¶¶ 44–57.) Shortly after the Complaint was filed, Wells Fargo removed the action to this court on the grounds that the court possesses federal question jurisdiction over the claims. (Docket No. 1.) On July 21, 2016, Wells Fargo filed its Answer, attaching multiple documents referenced in the pleadings and denying any wrongdoing in connection with the scheduled foreclosure on the Property. (Docket No. 11.)

On September 16, 2016, Wells Fargo filed the pending Motion for Judgment on the Pleadings (Docket No. 16), accompanied by a Memorandum of Law arguing that the Complaint fails to state a claim upon which relief can be granted. (Docket No. 17.) Wells Fargo argues that Mr. Beasley's wrongful foreclosure claim is deficient as a matter of law and fact because (1) it is not ripe until Wells Fargo completes foreclosure proceedings against the Property, (2) Mr. Beasley has no standing to challenge any breach of the terms of the securitized trust, and (3) Mr. Beasley has failed to allege facts demonstrating that Wells Fargo has violated any law in the course of the foreclosure. (*Id.* at pp. 4–8.) Wells Fargo also argues that the Complaint fails

to state a claim under the FDCPA because it fails to allege facts supporting the inference that Wells Fargo is a "debt collector" within the meaning of that statute or used false, deceptive, or misleading statements in attempting to foreclose on the Property. (*Id.* at pp. 8–9.) Finally, Wells Fargo argues that the Complaint fails to allege facts supporting a claim under the CFPA, because the cited regulation does not "impose[] a duty on a servicer to provide any borrower with any specific loss mitigation option." (*Id.* at pp. 9–10 (quoting 12 C.F.R. § 1024.41).)

On October 10, 2016, Mr. Beasley filed a Response in Opposition to the Motion. (Docket No. 18.) In it, Mr. Beasley argues that his claims are ripe because Wells Fargo has merely postponed the scheduled foreclosure sale of the Property and will in all likelihood proceed with the sale, should the court decline to hear his claims. (*Id.* at pp. 3–4.) Mr. Beasley also argues that his wrongful foreclosure claim is supported by Wells Fargo's failure to follow certain "statutory requirements" in pursuing foreclosure, but he does not mention the violations of Tenn. Code Ann. § 35-5-101 *et seq.* or the Tennessee Constitution that are alleged as the basis for the claim in the Complaint. (*See id.* at pp. 3–6.) Rather, Mr. Beasley argues that the wrongful foreclosure is based on Wells Fargo's failure to follow the "specific and detailed actions" required of a servicer pursuant to 12 C.F.R. § 1024.41. (*Id.* at p. 5.) According to Mr. Beasley, Wells Fargo was required to "evaluate [him] for loss mitigation options" but failed to notify him of those options, in violation of this regulation (which also serves as the basis for his claim under the CFPA). (*Id.* at pp. 5, 8.) Finally, Mr. Beasley argues that Wells Fargo acquired his debt from Ameriquest after he had already defaulted on his mortgage and is, therefore, a "debt collector" within the meaning of the FDCPA. (*Id.* at pp. 7–8.)

## **LEGAL STANDARD**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are

closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Conversely, a motion under Rule 12(b) "must be made before pleading if a responsive pleading is allowed." Rule 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions are evaluated under the same standard of review. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Accordingly, the court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). Although the court's decision regarding a motion for judgment on the pleadings rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). In considering a motion for judgment on the pleadings, the court "need not accept the plaintiff's legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr.*, 508 F.3d at 336. To withstand a Rule 12(c) motion for judgment on the pleadings, therefore, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.*

## **ANALYSIS**

At the outset, the court finds it necessary to note that Mr. Beasley's pleadings and submissions in this matter are not a model of clarity, asserting a plethora of legal theories that are not consistent between the Complaint and his Response and making it difficult to evaluate his claims. Nonetheless, after reviewing the pleadings, the exhibits attached thereto, and the parties' briefings, the court finds that Mr. Beasley's claims are deficient as a matter of law and fact and,

therefore, warrant dismissal pursuant to Rule 12(c). First, a review of the legal bases for Mr. Beasley's claims – including those asserted for the first time in his Response – demonstrates that a number of his claims are not premised on viable legal theories. Second, for those claims that are premised on viable legal theories, Mr. Beasley has failed to allege facts sufficient to support the material elements of those claims, relying instead on legal conclusions and unwarranted factual inferences that the court need not – and will not – accept as true.

## I. Claim for Wrongful Foreclosure

There are no specific elements for a wrongful foreclosure claim under Tennessee law. As many federal district courts in this state have noted, however, "Tennessee courts generally examine whether contractual or statutory requirements were met in the foreclosure of the property in question." *Ringold v. Bank of Am. Home Loans*, No. 2:12-cv-02344, 2013 WL 1450929, at *6 (W.D. Tenn. Apr. 9, 2013); *accord Lee v. Equifirst Corp.*, No. 3:10-cv-809, 2010 WL 4320714, at *10 (M.D. Tenn. Oct. 26, 2010). As bases for his wrongful foreclosure claim, Mr. Beasley alleges that (1) Park Place "has failed to conform to the terms of its own enabling documentation and has no standing to pursue a foreclosure sale," and (2) Wells Fargo has violated Tenn. Code Ann. § 35-5-101 *et seq.* and the Tennessee Constitution's due process guarantee by "failing to comply with the terms of the securitized trust." (Docket No. 1-1 ¶¶ 44–48.) To the extent that Mr. Beasley's claims are premised on allegations that either Park Place or Wells Fargo failed to comply with the terms of the securitized trust, however, Mr. Beasley has no standing to pursue them. As Wells Fargo has correctly noted – and Mr. Beasley has failed to rebut in his Response – "[c]ourts have consistently rejected borrower's requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement Provisions, based on [the] borrowers' lack of standing." *Dauenhauer v.*

7

*Bank of N.Y. Mellon*, 562 F. App'x 473, 480 (6th Cir. 2014). Mr. Beasley does not have standing to challenge Wells Fargo's compliance with the terms of the securitized trust, and allegations regarding such a breach, therefore, cannot support a claim of wrongful foreclosure under Tennessee law.

Nor has Mr. Beasley alleged facts sufficient to support any claim that – other than by failing to comply with the terms of the trust – Wells Fargo violated the statutory requirements set forth in Tenn. Code Ann § 35-5-101 *et seq.* or the due process guarantee of the Tennessee Constitution. Mr. Beasley alleges that "[t]he actual creditor [of his mortgage] is unknown" (Docket No. 1-1 ¶ 45), but he never addresses documents submitted by Wells Fargo demonstrating that it is the actual creditor, identifies any conduct on the part of Wells Fargo that he claims contributed to his ignorance of its identity as his creditor, identifies a specific provision of the Tennessee Code that he claims Wells Fargo has violated, or explains how any action taken by Wells Fargo constitutes a violation of due process. Mr. Beasley has, therefore, failed to adequately support his wrongful foreclosure claim insofar as it is premised on an alleged violation of Tennessee statutory or constitutional law.

In his Response, Mr. Beasley appears to abandon these legal theories and, instead, advances a new basis for his wrongful foreclosure claim, arguing that "[t]he specific statutory scheme which [Wells Fargo] violated and which supports a claim for wrongful foreclosure is 12 C.F.R. [§] 1024.41." (Docket No. 18, p. 5.) Generally, courts in the Sixth Circuit have treated legal theories first raised in the plaintiff's response to a dispositive motion "as an implicit motion to amend the complaint," but only "when all of the relevant facts had previously been pled." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 740 (6th Cir. 1999); *accord JAT, Inc. v. Nat'l City Bank of the Midwest*, 460 F. Supp. 2d 812, 818 (E.D. Mich. 2006). The court

need not determine whether it is appropriate to allow Mr. Beasley to advance this new legal theory, however, because even if it were to construe his Response as an implicit motion to amend, it could not grant that motion at this time. As discussed below, Mr. Beasley has failed to state a claim for violations of 12 C.F.R. § 1024.41 and, therefore, he cannot premise a claim for wrongful foreclosure on violations of that regulation. Accordingly, the court finds that the Complaint fails to allege viable legal theories or sufficient facts to support his claim that Wells Fargo wrongfully instituted foreclosure proceedings on the Property in violation of contractual or statutory requirements, and the court will dismiss the claim.[4]

## II.     Claim for Violations of the Fair Debt Collection Practices Act

The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices; insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged; and promote consistent state action to protect consumers. 15 U.S.C. § 1692(e). To those ends, the FDCPA regulates interactions between consumer debtors and "debt collector[s]," with debt collectors prohibited from using "false, deceptive, or misleading" statements, or "unfair and unconscionable" means, to collect or attempt to collect a debt. *Id.* §§ 1692e, 1692f. Mr. Beasley alleges that Wells Fargo is a "debt collector" within the meaning of the FDCPA and has used "false, deceptive, and/or misleading statements" and "unfair and/or unconscionable act[s]" in attempting to collect on the debt he owes in connection with the Property. (Docket No. 1-1 ¶¶ 51–53.)

---

[4] Wells Fargo has also argued that Mr. Beasley's wrongful foreclosure claim is not yet ripe because the foreclosure on the Property has not been completed. (Docket No. 17, pp. 4–5.) Due to the Complaint's failure to allege sufficient facts to state a claim, however, the court does not believe that it has information sufficient to determine whether the harm asserted by Mr. Beasley is sufficiently mature to warrant judicial intervention. The court does not, therefore, make any determination as to the ripeness of Mr. Beasley's wrongful foreclosure claim, and nothing in this memorandum should be construed as making any such determination.

Mr. Beasley has failed to allege facts sufficient to support the inference that Wells Fargo is a "debt collector" within the meaning of the FDCPA. The Act defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The FDCPA's prohibitions do not, however, apply to a "creditor," unless the creditor undertakes collection efforts on a debt that did not originate with the creditor and that was in default at the time it was obtained. *See id.* § 1692a(6)(F); *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 359 (6th Cir. 2012). Mr. Beasley has not alleged that Wells Fargo conducted business with the principal purpose of collecting debts, nor has he alleged that Wells Fargo regularly collects or attempts to collect debts owed to another entity. In order to sufficiently allege that Wells Fargo is a "debt collector" within the meaning of the FDCPA, therefore, Mr. Beasley must allege facts sufficient to demonstrate that his debt was already in default at the time that it was obtained by Wells Fargo. The allegations in the Complaint and the exhibits attached to the pleadings, however, fail to clarify (1) when Wells Fargo obtained Mr. Beasley's debt from Ameriquest, or (2) when Mr. Beasley first defaulted on his mortgage. Mr. Beasley has, therefore, failed to establish with well-pleaded allegations that Wells Fargo obtained his debt after he was in default and was, thereby, a "debt collector" subject to the prohibitions of the FDCPA.

Because Mr. Beasley has failed to sufficiently allege that the FDCPA applies to Wells Fargo, the court need not determine whether the allegations in the Complaint support the conclusion that any of Wells Fargo's actions were false, deceptive, misleading, unfair, or unconscionable, in violation of the Act. The court does note, however, that Mr. Beasley has

failed to identify the practices that he claims violated the FDCPA in either the Complaint or his Response and, absent this clarification, the court would be unlikely to find that he has adequately pled a claim under the FDCPA.

### III. Claim for Violations of the Consumer Financial Protection Act

As a preliminary matter, the court notes that Mr. Beasley has alleged that Wells Fargo violated the CFPA when it failed to comply with 12 C.F.R. § 1024.41. (Docket No. 1-1 ¶¶ 56–57.) As Mr. Beasley appears to recognize in his Response, however, § 1024.41 is not enforceable through the CFPA but, by its own terms, through Section 6(f) of RESPA (codified at 12 U.S.C. § 2605(f)). RESPA is a broad remedial statute intended to provide American consumers with more information about the real estate settlement process and protection from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601. Section 2605 – RESPA's provision governing the "[s]ervicing of mortgage loans" – provides that "[a] servicer of a federally related mortgage shall not . . . fail to comply with any . . . obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." *Id.* § 2605(k)(1)(E).

Mr. Beasley alleges that Wells Fargo failed to comply with the requirements of § 1024.41 when it "never offered [him] any loss mitigation alternatives." (Docket No. 1-1 ¶ 56.) The plain language of § 1024.41, however, expressly disclaims any intention to impose on servicers a duty to provide a borrower with loss mitigation options, stating:

> Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option. Nothing in § 1024.41 should be construed to create a right for a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or offer of, any loss mitigation option or to eliminate any such right that may exist pursuant to applicable law.

12 C.F.R. § 1024.41(a). In addition, multiple federal courts have recognized that this regulation

does not require servicers to offer loss mitigation alternatives to borrowers. *See, e.g.*, *Mader v. Wells Fargo Bank, N.A.*, No. 16-cv-309, 2017 WL 177619, at *5 (D.N.H. 2017) ("[T]he provisions of § 1024.41 do not require a servicer to offer a borrower a loan modification."); *Dent v. Inv. Corp. of Am.*, No. 15-cv-11268, 2015 WL 9694807, at *4 (E.D. Mich. Dec. 23, 2015) ("The Court also notes that RESPA does not actually require mortgage servicers to offer mortgage assistance to borrowers, but rather merely imposes certain obligations to *consider* offering such relief to borrowers.").[5] Rather, § 1024.41 imposes a duty on a servicer to comply with certain procedures in evaluating a loss mitigation application, a duty that is triggered only after the borrower submits such an application. Mr. Beasley has not alleged that he submitted an application for loss mitigation that would have triggered Wells Fargo's obligations under § 1024.41. Accordingly, Mr. Beasley has failed to allege that any of Wells Fargo's conduct was subject to the requirements of §1024.41 and, therefore, has failed to state a claim for violations of that regulation.

Moreover, RESPA – and regulations promulgated pursuant to it – applies only to a "servicer," defined as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). "Servicing," in turn, is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* § 2605(i)(3). Mr. Beasley has not alleged that Wells

---

[5] The only regulation that arguably imposes a duty on servicers to offer a borrower loss mitigation alternatives – 12 C.F.R. § 1024.40 – has not been cited by Mr. Beasley and is not enforceable through a private right of action. *See, e.g.*, *Decker v. Servis One, Inc.*, No. 1:15-cv-1170, 2017 WL 61965, at *3 (W.D. Tex. Jan. 5, 2017); *Joussett v. Bank of America, N.A.*, No. 15-6318, 2016 WL 5848845, at *5 (E.D. Pa. Oct. 6, 2016); *Brown v. Bank of N.Y. Mellon*, No. 1:16-CV-194, 2016 WL 2726645, at *2 (E.D. Va. May 9, 2016).

Fargo was the servicer of his mortgage, nor has he alleged that Wells Fargo was responsible for receiving and applying scheduled periodic mortgage payments to his loan. In addition to failing to allege facts sufficient to demonstrate that § 1024.41 applies to Wells Fargo's alleged conduct, therefore, Mr. Beasley has also failed to allege facts sufficient to demonstrate that Wells Fargo was a "servicer" that was subject to the requirements laid out in § 1024.41. Accordingly, the Complaint fails to state a claim for violation of 12 C.F.R. § 1024.41 upon which relief can be granted, and the court will dismiss the claim.

## CONCLUSION

For the reasons discussed herein, the Motion for Judgment on the Pleadings filed by Wells Fargo will be granted, and the Complaint will be dismissed without prejudice.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge